**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

| | |
|---|---|
| HETRONIC GERMANY GmbH<br>HYDRONIC-STEUERSYSTEME GmbH,<br>ABI HOLDING GmbH,<br>ABITRON GERMANY GmbH,<br>ABITRON AUSTRIA GmbH, and<br>ALBERT FUCHS,<br><br>Appellants-Defendants,<br><br>v. | Case No. 20-6057<br>Case No. 20-6100 |
| HETRONIC INTERNATIONAL, INC.<br><br>Appellee-Plaintiff. | On Appeal from the U.S. District Court for the Western District of Oklahoma, Case No. 5:14-cv-650 (Honorable Stephen P. Friot) |

**APPELLANTS' SUPPLEMENTAL BRIEF REGARDING THE IMPACT OF THE SUPREME COURT'S DECISION ON THE ISSUES RAISED IN THE APPEAL AND THE PROPER COURSE GOING FORWARD**

Appellants (hereafter the "defendants") hereby respond to this Court's September 1, 2023 Order directing supplemental briefing regarding the impact of the Supreme Court's decision on the issues in the appeal, and the proper course going forward.

The Supreme Court's decision makes clear that the Lanham Act judgment in this case cannot stand. As this Court previously recognized, nearly the entirety of the Lanham Act damages award—over 99%—rested on an *extraterritorial* application of the Act. *See Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 10 F.4th 1016, 1042-43 (10th Cir. 2021). This Court recognized that the Act could apply "domestically" only to the handful of sales that defendants made to U.S. buyers. *Id.* at 1043. The Supreme Court, however, has now

held that the Lanham Act's infringement provisions "are *not* extraterritorial" and "extend *only* to claims where the infringing use in commerce [of a trademark] is *domestic*." *Abitron Austria GmbH v. Hetronic International, Inc.*, 600 U.S. 412, 415 (2023) (emphasis added). Consequently, the Lanham Act award can be sustained only as to defendants' sales to U.S. buyers, because only those sales involved the requisite domestic "use in commerce" of the asserted marks. As discussed below, there were only €16,670.60 (about $19,800) in sales to U.S. buyers that could have violated the Lanham Act.

The Supreme Court's decision also makes clear that the injunction in this case was legally erroneous. This Court previously approved an injunction barring defendants from using the asserted marks in any "countries in which Hetronic [International] currently markets or sells its products." 10 F.4th at 1047. Because the Supreme Court has now held that the Lanham Act reaches only the use of marks " 'in the United States,' " 600 U.S. at 421, any injunctive relief must be limited accordingly.

Finally, the magnitude of the error with respect to the Lanham Act claims—which allowed the plaintiff to present to the jury a host of irrelevant evidence about foreign conduct beyond the reach of U.S. law—merits a new trial on the state-law claims. At a minimum, this Court should remand for the district court to consider that question.

## BACKGROUND

### I. District Court Proceedings

Plaintiff Hetronic International sued defendants—five companies and one individual who are all German or Austrian nationals—under the Lanham Act, *see* 15 U.S.C. §§ 1114(1)(1), 1125(a)(1), for alleged infringement of Hetronic International's registered

and unregistered trademarks. Hetronic International also brought breach of contract and other claims under state law.

The Lanham Act claims were based almost entirely on defendants' use of the asserted marks outside the United States—their foreign sales to foreign buyers. Defendants argued "that the Act doesn't apply extraterritorially to their foreign conduct," but the district court rejected those arguments. 10 F.4th at 1033.

The jury ultimately awarded approximately $96 million in damages for alleged Lanham Act violations, reflecting defendants' total worldwide sales of accused products. 10 F.4th at 1027; *see* 15 U.S.C. § 1117(a) (allowing recovery of "defendant's profits" from "defendant's sales" in "violation" of § 1114 or § 1125). The jury also awarded nearly $20 million in compensatory and punitive damages on the state-law claims. 10 F.4th at 1027. After trial, the district court issued an injunction barring defendants from using the asserted marks anywhere in the world. *Id.* at 1040.

## II. This Court Holds the Lanham Act Applies Extraterritorially and Affirms the Lanham Act Award Based on an Extraterritorial Application of the Act

This Court affirmed the Lanham Act award, rejecting defendants' argument that the Act does not apply extraterritorially. The Court explained that the Lanham Act judgment involved three categories of sales: (1) "Defendants' direct sales into the United States," (2) foreign sales of goods that may have later entered the United States, and (3) foreign sales of goods that never entered the United States. 10 F.4th at 1042. The Court recognized that only the first category involved a "domestic" application of the Act, stating that "the

Lanham Act would encompass Defendants' direct sales into the United States even if [this Court] concluded that the Act didn't apply extraterritorially." *Id.* at 1043.

This Court recognized that the Act could reach the other categories only to the extent that the Act applies extraterritorially. In this Court's view, whether the Act could apply extraterritorially to foreign conduct depended on whether "Defendants' foreign infringing conduct had a substantial effect on U.S. commerce." 10 F.4th at 1042. For the second category—foreign sales of goods that may have later reached the United States—this Court found such an effect because products reached the United States and "caused confusion among U.S. customers." *Id.* at 1044-46. This Court did not dispute that "Hetronic [International] failed to present evidence at trial of Defendants' foreign infringing sales that eventually reached the United States." *Id.* at 1044. The Court instead relied on pre-trial submissions defendants had filed in the district court that identified approximately "€1.7 million of their foreign sales" where the foreign-sold goods may have later reached the United States. *Id.* at 1043-44; *see* Appellants' App. vol. 4 at 941; Appellants' App. vol. 12 at 3007, 3029. Those submissions did not identify or quantify any resales in the United States of the goods that defendants sold abroad.

The overwhelming bulk of accused sales—over 97%—fell into the third category: foreign sales of goods that never reached the United States. For those sales, there was no evidence that the accused goods ever entered this country, confused customers here, or involved domestic uses of the asserted marks. Instead, this Court found that those foreign sales had a sufficient effect on U.S. commerce to justify applying the Lanham Act extraterritorially *only* because those foreign sales putatively "diverted" "foreign sales from

Hetronic [International]" and thus deprived Hetronic International of foreign revenues that otherwise would have flowed into its U.S. coffers. 10 F.4th at 1046.

This Court held that the district court's injunction—which extended "to every country in the world"—was "improperly broad." 10 F.4th at 1046. It ordered that the injunction be narrowed "to the countries in which Hetronic [International] currently markets or sells its products." *Id.* at 1047.

## III. The Supreme Court Holds that the Lanham Act Does Not Apply Extraterritorially and Requires Domestic Use in Commerce of the Trademark

The Supreme Court vacated this Court's judgment. "Applying the presumption against extraterritoriality," the Supreme Court held that the Lanham Act provisions under which Hetronic International sued, 15 U.S.C. §§1114(1)(a) and 1125(a)(1), "are *not* extraterritorial and . . . extend *only* to claims where the claimed infringing use in commerce is *domestic*." 600 U.S. at 415 (emphasis added).

The Supreme Court first held that the relevant Lanham Act provisions do not rebut the presumption against extraterritoriality. 600 U.S. at 419-21; *contra* 10 F.4th at 1034-38. The Supreme Court then held that a "permissible domestic application" of those provisions "turns on the location of the *conduct* relevant to [those provisions'] focus"—namely, whether the accused "infringing use in commerce" of the asserted mark occurred in the United States. 600 U.S. at 422 (emphasis added); *see id.* at 423 ("Congress deemed a violation of either provision to occur each time a mark is used in commerce in the way Congress described").

The Supreme Court thus held that "§ 1114(1)(a) and § 1125(a)(1) are not extraterritorial and that the infringing 'use in commerce' of a trademark provides the dividing line between foreign and domestic applications of these provisions." 600 U.S. at 428. "Because the proceedings below were not in accord with this understanding of extraterritoriality," the Supreme Court "vacate[d] the judgment of the Court of Appeals and remand[ed] the case for further proceedings consistent with [the Supreme Court's] opinion." *Id.*

## ARGUMENT

Under the Supreme Court's decision in this case, only defendants' sales to U.S. buyers are subject to the Lanham Act, because only those sales involve defendants' domestic use in commerce of the relevant marks. Defendants' *foreign* sales—which constitute over 99% of accused sales—fall outside the Act's scope. Those foreign sales did not involve defendants' domestic use of the marks in commerce and, as this Court previously recognized, could be covered by the Act only if the Act applied extraterritorially. Because the Supreme Court has now held that the Act does *not* apply extraterritorially, defendants' foreign sales cannot be the basis for Lanham Act liability. The Lanham Act award should be reduced accordingly. Injunctive relief must be similarly limited. And because the pervasive error with respect to the Lanham Act claims infected the jury's consideration of the state-law claims, retrial on those claims is appropriate.

# I. Lanham Act Liability Is Limited to Defendants' Sales to U.S. Buyers

## A. Only Defendants' Sales to U.S. Buyers Involve a Domestic Application of the Act

1. The Supreme Court held that the Lanham Act's infringement provisions are "not extraterritorial" and may only be applied domestically. 600 U.S. at 415. As this Court previously recognized, the only " 'domestic' " application of the Act here is with respect to "Defendants' direct sales into the United States." 10 F.4th at 1043. Only those sales involve defendants' domestic use of the marks in commerce. Defendants thus have not disputed that their sales to U.S. customers may be subject to the Lanham Act as a domestic application of the law.

Hetronic International presented no evidence at trial identifying defendants' sales to U.S. buyers. This Court nonetheless found it could determine the amount of defendants' U.S. sales based on evidence defendants offered "in their statement of undisputed facts in their motion for summary judgment and in an offer of proof they submitted at trial." 10 F.4th at 1042 n.8. Those sales "totaled €202,134.12 and 'were comprised of €185,463.52 of sales by Hetronic Germany, and €16,670.60 of sales by Abitron Germany.' " 10 F.4th at 1042-43 n.8 (quoting Appellants' App. vol. 4 at 939); *see also* Appellants' App. vol. 12 at 3007 (offer of proof). Thus, the Lanham Act applies domestically *at most* to defendants' €202,134.12 (about $240,000) in sales to U.S. buyers.

2. The Supreme Court's decision also makes clear, however, that only a fraction of defendants' U.S. sales could actually support Lanham Act liability. The Supreme Court held that "a sufficient risk of [consumer] confusion" is "a *necessary characteristic* of an

offending use," and that Lanham Act "liability" is permissible only where "a mark is used in commerce *in the way Congress described*"—*i.e.*, where the domestic use in commerce of the mark "'is likely to cause confusion.'" 600 U.S. at 423 (emphasis added). Thus, even where accused sales involve domestic use of a mark in commerce (and thus do not raise an *extraterritoriality* problem), those sales can be the basis for *liability* only if the defendant's use of the mark "is likely to cause confusion, or to cause mistake, or to deceive" as to the accused goods' source (or their association with, or approval by, another person). 15 U.S.C. § 1125(a)(1)(A) (requiring likelihood of confusion as to "affiliation, connection, or association of [the defendant] with another person" or "origin, sponsorship, or approval of [the defendant's] goods . . . by another person"); *see* 15 U.S.C. § 1114(1)(a); 600 U.S. at 428 (actionable "'use in commerce'" occurs only where "the mark serves to 'identify and distinguish [the mark user's] goods . . . and to indicate the source of the goods" (quoting 15 U.S.C. § 1127)).

Here, defendant Hetronic Germany's U.S. sales posed no such likelihood of confusion. As the evidence this Court relied on to identify defendants' U.S. sales explained, "[a]ll of [Hetronic Germany's] sales" into the United States "were sales *to the plaintiff* or its affiliates." Appellants' App. vol. 4 at 939; Appellants' App. vol. 12 at 3005-3006 ¶ 15(a); Appellants' App. vol. 12 at 3014-15. The use of *Hetronic International's asserted marks* on goods *sold to Hetronic International* and its affiliates could create no actionable likelihood of confusion, because Hetronic International knew exactly where those goods came from. *See* 600 U.S. at 428; *see also id.* at 429-30 (Jackson, J., concurring) (because "what makes a trademark a trademark under the Lanham Act is its *source-*

*identifying function*," "Congress prohibited" "use [of] a trademark" "in a way likely to . . . '*confus[e] consumers about source*'" (emphasis added)). The Lanham Act, moreover, does not allow suits by "consumers" who purchased "a disappointing product." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014); *see also* 5 *McCarthy on Trademarks and Unfair Competition* §28:15 (5th ed.); *cf. Curtin v. United Trademark Holdings, Inc.*, 2023 WL 3271038, at *5 (T.T.A.B. May 4, 2023) (holding in registration-opposition context that Lanham Act "does not entitle mere consumers to a statutory cause of action") (citing *Lexmark*). Hetronic International thus cannot recover under the Lanham Act for defendant Hetronic Germany's €185,463.52 in sales to the United States: All of those sales were made to Hetronic International and its affiliates as consumers, and they presented no cognizable likelihood of confusion.

As a result, the only U.S. sales that can support Lanham Act liability are defendant Abitron Germany's €16,670.60 (approximately $19,000) in sales to *non-Hetronic* U.S. buyers. Appellants' App. vol. 4 at 939; Appellants' App. vol. 12 at 3007, 3016, 3028. This Court should vacate the Lanham Act award and remand for damages to be reduced accordingly.[1]

[1] The Lanham Act allows plaintiffs to recover a "defendant's profits" from "violation[s]" of the Act. 15 U.S.C. § 1117(a). "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.* Here, the district court excluded defendants' expert testimony regarding costs. *See* 10 F.4th at 1053. The damages award thus reflected defendants' gross sales, not merely their profits.

**B. The Lanham Act Does Not Allow Recovery for Defendants' Foreign Sales**

As this Court previously recognized, the Lanham Act could apply to defendants' *foreign* sales—which constituted the overwhelming bulk of the Lanham Act award—only if the Act's infringement provisions applied "extraterritorially." 10 F.4th at 1043. Because the Supreme Court has now held that those provisions "are *not* extraterritorial," 600 U.S. at 415 (emphasis added), defendants' foreign sales fall outside the Act's scope. Hetronic International thus cannot recover for those foreign sales.

1. That is especially clear with respect to defendants' purely foreign sales—sales made by foreign sellers (defendants) in foreign countries to foreign sellers, of goods that never reached the United States. Those sales indisputably did not involve a "domestic" "use in commerce" of the asserted marks, as would be necessary for the Act to apply under the Supreme Court's decision. 600 U.S. at 415. To the contrary, all of the "conduct" relevant to those transactions, *id.* at 422, occurred outside the United States—the goods were produced and sold in foreign countries and never reached the United States.

Neither this Court nor Hetronic International ever suggested otherwise. This Court extended the Act to defendants' purely foreign sales only on a "diversion-of-sales" theory, reasoning that defendants' foreign sales diverted "sales from Hetronic [International] abroad," with the "effect" of reducing foreign revenues that Hetronic International otherwise could have repatriated to the United States. 10 F.4th at 1044-45. But the Supreme Court has now rejected the notion that an "*effect* in this country" can justify

application of the Lanham Act where, as here, the relevant "conduct" occurred abroad. 600 U.S. at 425-26.

Nor can Hetronic International recover defendants' profits (or proceeds) from foreign sales on the theory that those profits are somehow attributable to domestic uses of the marks in commerce. For one thing, there is no plausible argument that any of defendants' foreign sales were proximately caused by defendants' (extremely limited) use of the asserted marks within the United States. *Contrast WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2138, 2139 n.3 (2018) (allowing recovery of plaintiff's lost foreign profits where those lost profits were proximately caused by "domestic infringement"). For another, the Lanham Act ties recovery of "profits" from a "defendant's sales" to "a violation" of the Act's infringement provisions. 15 U.S.C. § 1117(a). Because defendants' *foreign* sales do not "violat[e]" those provisions, *id.*, they are not a proper basis for recovery. *See* 600 U.S. at 423 ("Congress deemed a violation of either provision to occur each time a mark is used in commerce in the way Congress described").

Tellingly, Hetronic International did not argue before the Supreme Court that it could recover for defendants' foreign sales based on a *domestic use in commerce*. Instead, it attempted to justify such recovery as a "domestic application" of the Act on the theory that *foreign* uses of marks in connection with defendants' foreign sales putatively had certain "effects" in the United States, such as "harm[ing] a business's goodwill in the United States" or creating "a likelihood of confusing customers in the United States." Brief for Respondent 44-55, in No. 21-1043 (U.S.). But the Supreme Court rejected that theory,

holding that a permissible domestic application of the Lanham Act requires domestic use of a mark in commerce—*not* merely domestic "effects" like the "likelihood of consumer confusion in the United States" that Hetronic International relied on. 600 U.S. at 424, 426 (emphasis omitted).

Indeed, Hetronic International conceded that, if the Lanham Act requires domestic " 'use' of a mark," that "would mean that the Act *never* applies to [so-called] foreign infringement." Brief for Respondent 48, in No. 21-1043 (U.S.). It never argued—even in the alternative—that damages based on defendants' foreign sales could be sustained if a domestic use in commerce were required.

2. Insofar as Hetronic International may argue that it can recover for defendants' "foreign sales" of goods that later "ended up in the United States," 10 F.4th at 1043 (identifying about €1.7 million of such sales), that argument fails. Those foreign sales would still involve defendants' *foreign* uses of the marks in commerce. Defendants' "conduct" with respect to those sales—which is what matters for extraterritoriality purposes, 600 U.S. at 422-23—occurred entirely outside the United States.

Nor would the mere fact that a (foreign) buyer may have later brought the goods into the United States establish a domestic use in commerce. As the Supreme Court explained, "the 'term "use in commerce" means the bona fide use of mark *in the ordinary course of trade*.' " 600 U.S. at 428 (emphasis added). It thus does not encompass a good's mere presence, or the good's use by an end-user, in the United States. *See also id.* at 430-41 (Jackson, J., concurring).

Hetronic International thus would have to show not only that foreign-sold goods entered the United States, but that defendants subsequently used the marks in commerce in the United States with respect to those goods. It did not do so: Hetronic International offered no evidence that the goods even entered the United States. And while this Court determined that €1.7 million worth of foreign-sold goods entered the United States based on evidence that defendants submitted, *see* 10 F.4th at 1043, that evidence identified no actual resales of the goods in the United States. *See* Appellants' App. vol. 4 at 939-40; Appellants' App. vol. 12 at 3007 ¶ 22. Nor did that evidence provide any basis to infer that any such sales would create a likelihood of consumer confusion; to the contrary, it explained that defendants' goods (radio remote controls for cranes and similar equipment) would be incorporated into the foreign buyer's equipment, such as a crane, and then sold with the crane. Appellants' App. vol. 12 at 3006 ¶ 16. Thus, the "end-user customer from the machine manufacturer [who purchased defendants' radio remote controls abroad] often would not even notice which [radio remote control] is implemented into the machine." Appellants' App. vol. 12 at 3006 ¶ 17.

Even if the foreign-sold goods were resold in the United States, those U.S. sales would not constitute domestic use of the mark *by the defendants*. The Lanham Act imposes liability on the "person" who domestically "uses in commerce" the relevant mark. 15 U.S.C. § 1125(a)(1). For later U.S. resales of goods that defendants sold abroad, that person would be *the reseller*—not *defendants*. Any domestic use of the mark in commerce could not be attributed to defendants absent some agency relationship between defendants and

the reseller, or a similar basis for vicarious or contributory liability. Hetronic International has never asserted any such theory.

Hetronic International may argue that *other persons'* resales in the United States can be considered *defendants'* use of the marks in commerce under the reasoning of Justice Jackson's concurring opinion. *See* 600 U.S. at 431 (Jackson, J., concurring). But Justice Jackson spoke only for herself, with no other Justice endorsing her view of what qualifies as a foreign defendant's domestic use of a mark in commerce. *See id.* at 429; *id.* at 428 n.6 (majority opinion); *id.* at 444-45 n.7 (Sotomayor, J., concurring in judgment). Insofar as Justice Jackson suggested that *a third party's resale* of a product in the United States should be considered a domestic use in commerce *by the foreign seller of that product*, *id.* at 431 (Jackson, J., concurring), that view exceeds any reasonable view of the statute's reach. Indeed, imposing Lanham Act liability on a company that sells a good in a foreign country, just because a third party later resells that good in the United States, would effectively allow U.S. law to govern foreign entities' conduct in foreign markets—precisely what the presumption against extraterritoriality is designed to avoid. *See* 600 U.S. at 427-28.

A person's "use in commerce" of a mark, moreover, is also the basis for *registering* trademark rights. 15 U.S.C. § 1051(a)(3)(C). The Supreme Court made clear that the same definition of "use in commerce" applies throughout the statute—both for purposes of infringement and for purposes of registration. *See* 600 U.S. at 428 ("Under the Act, the 'term "use in commerce" means the bona fide use of a mark in the ordinary course of trade,' where the mark serves to "identify and distinguish [the mark user's] goods . . . and to indicate the source of the goods.") (quoting 15 U.S.C. § 1127). A foreign seller would not

be considered to "use [a mark] in commerce" in the United States for purposes of *registering* that mark simply because an unaffiliated third party resells the good in the United States. *See Bayer Consumer Care AG v. Belmora LLC*, 90 U.S.P.Q.2d 1587, at *4 (T.T.A.B. Apr. 6, 2009) ("A third party's importation and resale of goods does not by itself constitute 'use' by petitioner, at least not without some allegation that the third party was licensed or authorized by petitioner to 'use' petitioner's alleged mark on petitioner's behalf." (emphasis in original)). Likewise, a foreign seller (like defendants here) should not be considered to "use [a mark] in commerce" in the United States for purposes of *infringing* that mark simply because an unaffiliated third party resells the good in the United States.

## II. Any Injunctive Relief Must Be Limited to Use of the Marks in the United States

This Court previously "narrow[ed] the injunction" in this case "to the countries in which Hetronic [International] currently markets or sells its products," explaining that "Hetronic [International] could hardly assert a trademark claim against Defendants" "in a country in which Hetronic [International] has no presence." 10 F.4th at 1047. The Supreme Court's decision now makes clear that Hetronic International cannot assert a trademark claim against defendants based on their use of the asserted marks in *any* country other than the United States. And injunctive relief under the Lanham Act is limited to "prevent[ing] a violation" of the Act (or a plaintiff's rights thereunder). 15 U.S.C. § 1116(a). Because only a mark's use in commerce *in the United States* could constitute a "violation" of the Act, any injunctive relief must be limited to enjoining defendants from

using the asserted marks in commerce, *in this country*. Insofar as the injunction extended to uses outside the United States, it is impermissibly extraterritorial and must be vacated.

Concomitantly, this Court should direct the district court to vacate the sanctions it previously imposed for putative violations of the prior injunction. *See* Order at 7, Dist. Ct. ECF No. 465 (June 2, 2020) ("Sanctions Order"). After the district court issued its injunction, defendants promptly complied by geoblocking their websites to prevent access by users in the United States. *See* Report of Reimer Bulling at 1, Dist. Ct. ECF No. 453-1 (May 12, 2020). The district court nonetheless held that defendants violated the injunction because their websites remained accessible to potential customers in Germany and Austria. *See* Sanctions Order at 3-4. The Supreme Court's decision makes clear that the Lanham Act did not allow the district court to enjoin defendants' marketing to customers outside the United States (or other foreign uses of marks). Sanctions for allegedly violating that improper injunction thus cannot stand. *See Reliance Ins. Co. v. Mast Const. Co.*, 84 F.3d 372, 376 (10th Cir. 1996) ("[A] claim for civil contempt must fall if the order that was disobeyed is subsequently reversed.").

## III. The Magnitude of the Error with Respect to the Lanham Act Claim Warrants Retrial on the State-Law Claims

The district court's erroneous ruling that the Lanham Act applies extraterritorially had a devastating, outsized impact on the trial in this case—including on the state-law claims tried in tandem with the Lanham Act claims. For three weeks, the jury heard reams of irrelevant evidence about foreign conduct—supposed foreign infringement of Hetronic International's trademarks—that we now know to be beyond the reach of U.S. law. That

highly prejudicial presentation of irrelevant foreign conduct merits a new trial on the state-law claims. *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 185-87 (3rd Cir. 1990) (affirming granting of new trial where prejudicial and irrelevant evidence was admitted concerning defendant's willingness to violate laws) (citing 10 *Moore's Federal Practice* §403.10[1] at IV-75 & n.9 (1990); E. Cleary (ed.), *McCormick on Evidence* §185 at 545 (1984); C. Wright & A. Miller, *Federal Practice and Procedure* §5215 at 281). The *Bhaya* Court spoke of such irrelevant evidence as unfairly tainting the jury, and creating a desire to "punish" the defendant for other alleged wrongs.

There can be little doubt that the jury here was tainted by irrelevant foreign conduct evidence. The jury was permitted to hear and see reams of such evidence on the ground that it might support an extraterritorial application of the Lanham Act. On that basis, the jury awarded $96 million in Lanham Act damages. But, the Supreme Court has now held that the Lanham Act's infringement provisions "are *not* extraterritorial." 600 U.S. at 415 (emphasis added). The Supreme Court's holding not only did away with $96 million in foreign Lanham Act damages—leaving less than $20,000 in permissible domestic Lanham Act damages—it also confirmed the irrelevance of the foreign conduct evidence heard by the jury.

But, the jury still heard all of that irrelevant and prejudicial evidence—no court can "unring" that bell. The result was that Hetronic International got the prayer on all of its state law claims: $6.4 million on the Breach of Contract claims, and a combined $5.3 million on 4 tort claims (Unfair Competition, Tortious Interference with Contract, Aiding and Abetting Breach of Fiduciary Duty, and Civil Conspiracy). That the jury gave a

combined, single award of $5.3 million on 4 completely different tort claims—*and then awarded an additional $10.7 million in punitive damages on those claims*—feels a lot like a runaway train fueled by irrelevant foreign conduct evidence.

Take the Unfair Competition tort claim as a particularly troubling example. Hetronic International made "unfair competition" claims under both the Lanham Act and under Oklahoma common law. The evidence that supported the Lanham Act unfair competition claim is now irrelevant, but it is inconceivable that the jury did not consider it in awarding Hetronic International its prayer on its Oklahoma Unfair Competition claim. It is at least conceivable that the jury's $5.3 million tort claims award stemmed in part from the (supposed) strength of irrelevant foreign conduct. Likewise, the contract verdicts were at least tainted by irrelevant foreign evidence that once supported a $96 million verdict, but is no more.

The erroneous admission of irrelevant foreign conduct evidence can be corrected with respect to the Lanham Act claims by limiting Lanham Act damages to defendants' €16,670.60 in U.S. sales, as discussed above. But, as to the spillover prejudice from that mountain of irrelevant evidence that infected the jury's consideration of the state-law claims, "the only proper way to correct the error" is to grant a "retrial" on those claims. *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 460 (10th Cir. 1982). At bare minimum, this Court should remand for the district court to consider that question.

## CONCLUSION

The Supreme Court's decision makes clear that the vast majority of relief awarded under the Lanham Act—both monetary and injunctive—can no longer stand. This Court

should hold that damages must be limited to the €16,670.60 in sales made to non-Hetronic buyers in the United States, and that any injunction must be limited to enjoining defendants' use of the marks in the United States. The Court should also order a new trial on the state-law claims or, at a minimum, direct the district court to consider that issue. This Court thus should vacate the judgment below and remand the case to the district court for "further proceedings" consistent with the Supreme Court's decision and the foregoing arguments. 600 U.S. at 428.

Respectfully submitted,

*/s/Geren T. Steiner*

Anton J. Rupert, OBA #7827
Geren T. Steiner, OBA #18845
**Rupert & Steiner, PLLC**
14001 Quail Springs Parkway
Oklahoma City, OK 73134
(405) 607-1494
(405) 607-1450 (Facsimile)
tony@rsm-law.com
geren@rsm-law.com
*ATTORNEYS FOR APPELLANT-DEFENDANT*

**Appellant-Defendant:**

Geren T. Steiner, geren@rsm-law.com, 405-607-1496

Anton J. Rupert, tony@rsm-law.com, 405-607-1495

**Appellee-Plaintiff:**

Debbie L. Berman, DBerman@jenner.com, 312 923 2764

Wade Thompson, Wthompson@jenner.com, 312 840 8613

Sam R. Fulkerson, sam.fulkerson@ogletree.com, 405-546-3751

Servodidio, Gianni P., GServodidio@jenner.com, 212 891 1620

John N Hermes, john.hermes@mcafeetaft.com, 405-235-9621

Laura Hulce, LHulce@jenner.com, 312-840-7298

Philip R Bruce, philip.bruce@mcafeetaft.com, 405-228-7390

This is to certify that all required privacy redactions have been made; paper copies of Motions are not required by 10th Cir. R. 27.2, and the electronic submission was scanned for viruses with McAfee LiveSafelnk and is free of viruses.

*/s/ Geren T. Steiner*

Geren T. Steiner